## Case No. 11,483.

PUTNAM v. SUDHOFF et al.

[1 Ban. & A. 198; [1] 3 Am. Law Rec. 103.]

Circuit Court, E. D. Missouri. April, 1874.

PATENTS — FAILURE TO MARK ARTICLES "PATENTED" — ACT OF 1870.

1. The suit was brought for the infringement of complainant's patent for bottle stopper fasteners, and the defendant set up as a defence the failure of the complainant to mark or stamp the patented articles as required by section 38 of the patent act of 1870 [16 Stat. 203], and it appeared that the fasteners made were not so marked. The complainant claimed, that such marking or stamping would have been so expensive as to exhaust his profit on the manufactured article; it was, however, shown that the fasteners could have been stamped as required by the law: Held, that the impossibility or impracticability of marking or stamping patented articles is not dependent upon the question of pecuniary loss or gain to the patentee, and that said section 38 was applicable to this case, and that the complainant's fasteners should have been marked in compliance therewith; and also that the complainant's failure to mark them, debarred him from recovering "damages."

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

2. Whether section 38 of the patent act of 1870 applies to profits, quære.

3. In this case the court, instead of granting a provisional injunction, ordered an account to be kept by the defendants of the infringing articles sold by them: *Held*, that as section 55 of said act seemingly maintains a distinction between profits and damages, the equities of this case required that, at least, profits from the time of the order, should be allowed the complainant.

[This was a bill in equity by Henry W. Putnam, praying for an injunction against defendants, G. Sudhoff and others, and an assessment of damages for using bottle-stopper fasteners made in imitation of the Putnam patent fastener. Letters patent No. 23,263 were granted to H. W. Putnam March 15, 1859, and reissued January 24, 1864 (No. 1,606). Defendants are soda manufacturers in St. Louis. The defense, among other matters, set up that complainants' manufacture was not stamped with the word "patented," together with the day and year the patent was granted, as required by section 33 of the act of July 8, 1870; that they were in the habit of buying in open market, and could not distinguish the genuine from those made in imitation.] [2]

D. W. Paul, for complainant.
Frivelnburg & Rassieur, for defendants.

TREAT, District Judge. This is a suit in equity, for an alleged infringement of a patent. The defendants deny the infringement, and set up the failure of the patentee to mark, as required by law, the patented product. The fasteners made by plaintiff, under his patent, were not marked or stamped as the law requires. His excuse for not doing so is, that such marking or stamping would have been expensive, and enhanced the price of the manufactured article. The law exacts such marking or stamping, unless from the character of the article it cannot be done. The impossibility or impracticability is not made dependant on the question of pecuniary loss or gain to the patentee. The object is, in all possible cases, to give proper notice to the world, that the specified product or machine is patented. The wire fasteners of plaintiff could, as has been demonstrated, be stamped, as required, at a trifling cost. This case illustrates the wisdom of that provision in the patent law. The fasteners in the market, made by the patentee and others, can be distinguished, if at all, only by those very familiar with the plaintiff's manufacture. Hence, purchasers could not know, whether they were buying the patented article or not. The provisions of section 38 of the act of 1870, are therefore, strictly applicable to this case.

The more important question follows: viz., whether the "damages," not recoverable in consequence of plaintiff's failure to mark, are the damages technically considered, as

contradistinguished from "profits," or include profits only. Before the act of 1870, the plaintiff, in equity, recovered of the defendants, the profits the latter had made, and, on the law side of the court, his damages; and it was doubted whether, in equity, he could recover more than the actual profits defendants had made, even though they might, by proper skill, etc., have made more, or even though the plaintiff's loss of profits had been large, through defendants' infringement. If that rule be applied here, what would the amount of recovery be?

The defendants used many fasteners not genuine, and the only profit to them, was the difference between what they paid for the spurious, and what they would have been compelled to pay the plaintiff for the genuine. The general price was $1.50 per gross. True, the plaintiff lost the sale, at that price, of the amount of the spurious ones, defendants used, and the difference in price may be far from making good his loss. But, he is debarred from damages for his loss, because he failed to comply with the law. In one sense, he led the defendants into the use of spurious fasteners, by not giving the notice, through marking, which the law contemplates.

It seems, that genuine and counterfeit fasteners were in the market, which, when new, were hardly distinguishable; that such fasteners continue on the bottles for repeated use, (and therein is the peculiar merit of the invention); that when they became rusty or abraded, they were returned; that genuine second-hand fasteners were bought and sold; and consequently, the purchasers and parties using such articles, in the absence of the required mark, are easily misled. One of the defendants did know, in 1872, that counterfeits were in use, but he did not have the notice required, that any of those used by him and his firm, were spurious.

It is evident, that the defendants have used some of the counterfeit articles, and that a perpetual injunction should be issued against them. But how are they to ascertain, when they purchase, hereafter, new or second-hand fasteners, whether they are genuine or counterfeit? Plaintiff, it seems, sells through his agents, and also sells to favored customers, not only for their own use, but for resale by them. In the absence of the proper stamp, purchasers, and those who use fasteners, are apt to be betrayed into infringements upon plaintiff's rights, which he is privileged to enjoy only on the terms prescribed by law.

It is very far from clear, that the provisions of section 38, are not designed to cover profits as well as technical damages; yet, as section 55, seemingly maintains the distinction between them, and as the court, instead of granting a provisional injunction in this case, ordered an account to be kept by defendants, the equities of the case, under the patent act, demand that at least profits since said order should be given.

[2] [From 3 Am. Law. Rec. 103.]

In view of all the facts, the decree will be for a perpetual injunction, and for the actual profits of the plaintiff, to be ascertained by the master, said profits to be confined to the difference between the prices paid by defendants, and those at which plaintiff sold the genuine fasteners. Providence Rubber Co. v. Goodyear, 9 Wall. [76 U. S.] 801; Goodyear v. Allyn [Case No. 5,555]; Cowing v. Rumsey [Id. 3,296]; Goodyear v. New Jersey Cent. R. Co. [Id. 5,563]; Keplinger v. De Young, 10 Wheat. [23 U. S.] 358; Act 1870, §§ 38, 55.

[For other cases involving this patent, see note to Putnam v. Hickey, Case No. 11,480.]